IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

PRIDE TRANSPORTATION          §
                              §
VS.                           §          ACTION NO. 4:08-CV-007-Y
                              §
CONTINENTAL CASUALTY COMPANY  §
AND LEXINGTON INSURANCE COMPANY §

<u>ORDER GRANTING MOTIONS FOR SUMMARY JUDGMENT</u>

Pending before the Court is the Motion for Summary Judgment filed by defendant Lexington Insurance Company ("Lexington") (doc. 147). Also pending before the Court is a similar motion filed by defendant Continental Casualty Company ("Continental") (doc. 150). After review of the motions, the related briefs, the evidence highlighted therein, and the applicable law, the Court concludes that the motions should be granted.

<u>I. Facts</u>

This insurance dispute arises because of an underlying lawsuit filed as a result of an automobile accident that occurred in Texas on October 11, 2006. The underlying lawsuit was filed in the 271st Judicial District Court, Wise County, Texas, by Wayne and Linda Hatley against the plaintiff herein, Pride Transportation ("Pride"), and one of its employees, Krystal Harbin. Pride, a Utah corporation, is a large-fleet interstate motor carrier with drivers operating throughout the United States. At the time of the accident, Harbin was driving one of Pride's trucks and rear-ended the pick-up truck being driven by Wayne Hatley on southbound US Highway 287 near Decatur, Texas. As a result of the accident, Hatley sustained

significant injuries and was rendered a paraplegic.

The Hatleys' lawsuit alleged negligence against both Harbin and Pride. The petition alleged that Pride was responsible for Harbin's actions under the doctrines of respondeat superior and/or vicarious liability and under federal and state motor-carrier safety regulations. The suit sought damages for past and future medical expenses, lost earnings and future loss of earning capacity, past and future physical impairment, past and future disfigurement, past and future pain and mental anguish, past and future loss of household services, past and future loss of consortium, and property damage to the Hatleys' vehicle.

At the time of the accident, Pride was covered by insurance policies issued by each of the defendants. Pride obtained the insurance to "protect its interest, to defend it and indemnify it for accidents which may occur anywhere in the United States in connection with its business operations." (Pride's Am. Compl. 2, ¶ 9.) Continental was Pride's primary liability insurer and had issued Pride a policy in the amount of $1,000,000. Lexington was Pride's excess insurer and had issued Pride a policy in the amount of $4,000,000. Harbin was an additional insured under both policies. As a result, Continental began to undertake a defense of both Pride and Harbin in the Hatleys' lawsuit. Both policies provide that the insurer's duty to defend or settle ends once the limit of insurance has been paid in judgments or settlements.[1]

---

[1] Specifically, the Continental policy provides that "[o]ur duty to defend or settle ends for a coverage when the Limit of Insurance for that coverage has been exhausted by payment of judgments or settlements." (Continental's App.

On June 6, 2007, the Hatleys made a settlement demand to Harbin alone to settle the claims they had filed against her for the combined $5,000,000 limits of both policies. The demand did not include the Hatleys' claims against Pride. A week after the demand, Pride's counsel demanded that Continental tender its policy limits to Lexington, which Continental did the following month. Because Continental's policy limits had been tendered to Lexington, Lexington took over negotiations regarding the Hatleys' settlement demand.[2]

Lexington initially attempted to respond to the Hatleys' offer by seeking permission to make a counteroffer settling all claims against both defendants for the limits of both policies. The Hatleys refused, however, to expand the proposed settlement to include Pride. Furthermore, Harbin's counsel demanded that Lexington accept the offer on behalf of Harbin. Thus, Lexington accepted the offer on Harbin's behalf on July 20, 2007. On August 17, 2007, the Hatleys signed a formal settlement agreement containing a release of all of the Hatleys' claims against Harbin. Because its policy limits were then exhausted, Lexington withdrew from further defense of Pride.

Shortly after Lexington accepted the Hatleys' offer to settle with Harbin, Pride filed a cross-claim for common-law indemnity against Harbin in the Hatleys' lawsuit.[3] Pride ultimately settled

138.) Similarly, Lexington's policy provides that "[t]his policy shall cease to apply after the applicable limits of liability have been exhausted by payments of defense costs and/or judgments and/or settlements." (Lexington's App. 60.)

[2]Continental continued to provide for Harbin's and Pride's defense until after its policy limits were actually paid to the Hatleys.

[3]Pride apparently subsequently nonsuited the cross-claim in the Hatleys' lawsuit but filed a similar claim a few months later in state court in Wise County.

the Hatleys' claims against it for an additional $2,000,000, plus notes payable to the Hatleys upon any recovery from the products-liability defendants or from Continental or Lexington.

Pride also filed this lawsuit against the insurers in Utah state court. The suit was removed to federal court and, upon Continental's motion, transferred to this Court for the convenience of parties and witnesses under 28 U.S.C. § 1404(a). Pride's amended complaint alleges that Lexington and Continental breached their contracts of insurance with Pride by failing to provide a full, complete, and adequate defense for Pride in the Hatleys' lawsuit. Pride also contends that the insurers's actions constitute breaches of the covenant of good faith and fair dealing and of fiduciary duties owed to Pride. Finally, Pride alleges an alternative cause of action under the Texas Insurance Code, in the event the Court determines that Texas law applies. The insurers now seek summary judgment on Pride's claims.

## II.  Summary-Judgment Standard

Summary judgment is appropriate when the record establishes "that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). To determine whether there are any genuine issues of material fact, the Court must first consult the applicable substantive law to ascertain what factual issues are material. *Lavespere v. Niagara Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *cert. denied*, 114 S. Ct. 171 (1993). Next, the Court must

review the evidence on those issues, viewing the facts and inferences therefrom in the light most favorable to the nonmovant. *Id.; Newell v. Oxford Management Inc.*, 912 F.2d 793, 795 (5th Cir. 1990); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989).

In making its determination on the motion, the Court must look at the full record including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. FED. R. CIV. P. 56(c); *see Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Rule 56, however, "does not impose on the district court a duty to sift through the record in search of evidence to support a party's [motion for or] opposition to summary judgment." *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 825 (1992). Instead, parties should "identify specific evidence in the record, and . . . articulate the 'precise manner' in which that evidence support[s] their claim." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994). Still, the Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The party moving for summary judgment has the initial burden of demonstrating that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). When the moving party has carried its summary-judgment burden, the nonmovant must go beyond the pleadings and by its own affidavits or by the depositions, answers to interrogatories, or admissions on file set forth specific facts

showing that there is a genuine dispute for trial. FED. R. CIV. P. 56(e). This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50.

## II. Analysis

A. The *Stowers* Duty

The insurers allege that they are not liable for breach of contract because they were required by Texas law to accept the Hatleys' reasonable demand for settlement of their claims against Harbin, one of their insureds. Under Texas law, an insurer can be liable for negligently failing to settle a claim within policy limits. *See G.A. Stowers Furniture Co. v. Am. Indem. Co.*, 15 S.W.2d 544, 547 (Tex. Comm'n App. 1929, holding approved). As a result, Texas law requires that an insurer "exercise 'that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business' in responding to settlement demands within policy limits." *Am. Physicians Ins. Exch. v. Garcia*, 876 S.W.2d 842, 848 (Tex. 1994) (quoting *Stowers*, 15 S.W.2d at 547); *see also Travelers Indem. Co. v. Citgo Petroleum Corp.*, 166 F.3d 761, 764 (5th Cir. 1999) ("Under Texas law, an insurer defending its insured on a covered claim owes that insured a tort law duty to accept a reasonable settlement offer within policy limits rather than unreasonably risk an adverse

judgment substantially over the policy limits.").

This "*Stowers* duty" is activated by a settlement demand when "three prerequisites are met: (1) the claim against the insured is within the scope of coverage, (2) the demand is within the policy limits, and (3) the terms of the demand are such that an ordinarily prudent insurer would accept it, considering the likelihood and degree of the insured's potential exposure to an excess judgment." *Am. Physicians,* 876 S.W.2d at 849. Additionally, the demand must propose to release the insured fully in exchange for a sum certain within policy limits or for the policy's limits. *Id.* at 848-49.

The application of the *Stowers* doctrine becomes more difficult when multiple claimants or insureds are involved. Texas law permits an insurer, however, "to favor a claim by one claimant over a claim by another claimant in pursuit of this [*Stowers]* duty." *Travelers*, 166 F.3d at 764. Thus, an insurer "faced with a settlement demand arising out of multiple claims and inadequate proceeds . . . may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims . . . . Such an approach . . . promotes settlement of lawsuits and encourages claimants to make their claims promptly." *Tex. Farmers Ins. Co. v. Soriano*, 881 S.W.2d 312, 315 (Tex. 1994). Similarly, a valid *Stowers* demand requires that an insurer settle on behalf of one of several insureds even when doing so exhausts policy limits, thus leaving other insureds exposed. *Travelers*, 166 F.3d at 768. This result prevents the insurer from settling on behalf of one insured and being forced to choose between

either continuing to defend nonsettling co-insureds beyond policy limits or facing liability for disparate treatment of the nonsettling co-insureds:

> A settlement offer given to only one insured that would exhaust coverage under the liability limit of the policy creates a dilemma for the insurer. An insurer should not be precluded from accepting a reasonable settlement offer for fewer than all insureds. By accepting the offer the insurer would avoid being subjected to liability exceeding the policy limits due to its rejection of a reasonable offer. Further, any settlement would benefit all insureds by decreasing the total amount of liability in the underlying suit.

*Millers Mut. Ins. Ass'n of Illinois v. Shell Oil*, 959 S.W.3d 864, 870 (Mo. Ct. App. E.D. 1997); *see also Travelers*, 166 F.3d at 764 (noting difficulties imposed by *Stowers* duties when multiple parties and claims are involved, including that "if insurers are subject to both liability for failure to settle under *Stowers* and liability for disparate treatment of nonsettling insureds, insurers would find the policy limits they carefully bargained for of little utility"). Thus, the fact that there are two insureds at issue herein appears to be of no moment in determining whether the insurers satisfied their *Stowers* duties under Texas law regarding the Hatleys' settlement demand.

Finally, a settlement's reasonableness is "measured by looking at the initial demand for settlement in isolation." *Travelers*, 166 F.3d at 765. The insurer, and thus a court reviewing its decision, "'consider[s] *solely* the merits of the' settled 'claim and the potential liability of its insured on 'that 'claim.'" *Id.* (citing *Soriano*, 881 S.W.2d at 316).

B.  Choice of Law

Understandably not liking the import of this Texas law, Pride contends that Utah state law instead applies.  As previously mentioned, this case was transferred to this Court from Utah's federal court for the convenience of the parties and witnesses in accordance with 28 U.S.C. § 1404(a).  As a result, this Court must apply the choice-of-law rules of the transferor court.  See *Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964).

This is without consequence, however, because both Utah and Texas "apply the 'most significant relationship' approach as described in the Restatement (Second) of Conflict of Laws in determining which state's laws should apply to a given circumstance." *Salt Lake Tribune Publ'g Co. v. Mgmt. Planning, Inc.*, 390 F.3d 684, 693 (10th Cir. 2004) (applying Utah law); *see also Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000) (Texas law).  In contractual disputes, courts applying this test generally consider "(1) the place of contracting, (2) the place of negotiation of the contract, (3) the place of performance, (4) the location of the subject matter of the contract, and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties." *Salt Lake Tribune*, 390 F.3d at 693 (citing Restatement (Second) of Conflict of Laws § 188 (2010) (hereinafter, "Restatement")).  Courts applying the test in tort cases, however, consider "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of

incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." RESTATEMENT § 145. Importantly, a court applying choice-of-law principles in either a tort or contract case must determine "which state's law has the most significant relationship *to the particular substantive issue to be resolved." Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 205 (Tex. 2000) (citing Restatement at § 145(1) regarding torts); Restatement § 188(1) (regarding contracts).

In support of its argument that Utah law controls, Pride proffers that it is located in Utah, negotiated for and paid its insurance premiums in Utah, and has no place of business in Texas. If the issues herein arose from the parties' negotiations for insurance, payment of premiums under the policy, or general interpretation of the terms of the insurance policies at issue herein, the Court might agree. But, as noted by the Utah district court prior to transfer,[4] Pride's claims concern the insurers' actions in defending and resolving claims in the underlying Texas litigation. Pride's complaint contends that the insurers breached the insurance contracts and engaged in bad faith by, inter alia, settling the Hatleys' claims

---

[4]The insurers contend that the Utah district court determined prior to transfer that Texas law applies to this action and that this Court is bound by that decision. The Utah court's decision was not quite so conclusive, however, as it "[a]ssum[ed], without deciding, the disputed issue of whether Utah law applies to the claims at issue in this case," but nevertheless concluded that "under the terms of Pride's own [c]omplaint, those claims nonetheless turn on issues of Texas insurance law, namely the *Stowers* doctrine and Texas law regarding indemnity rights and codefendants." (Continental's App. 318.)

On a related note, Pride contends that the Utah district court did an about-face on this issue in a later opinion, citing *Cincinnati Insurance Company v. Linford Brothers Glass Company*, No. 2:08-CV-387-TC, 2010 WL 520490 (D. Utah, Feb. 9, 2010). As noted by the insurers, however, the court in *Cincinnati* was concerned with construction of the insurance contracts at issue rather than the insurer's claims' handling in the underlying litigation.

against Harbin alone and then refusing to defend Pride further, thus leaving Pride exposed. These claims were asserted by Texas residents in a Texas state court as a result of a traffic accident that occurred in Texas. The insurers' alleged refusal to provide a defense to Pride resulted from their belief that Texas law and the facts of the case required them to settle at policy limits on behalf of only one of the insureds. Thus, in determining whether the insurers' conduct in the Texas litigation breached the parties' contract or the insurers' other duties to Pride, this Court concludes that Texas has the most significant relationship to the issues. Thus, Texas law should apply. *See Rupp v. Transcon. Ins. Co.*, 627 F. Supp. 2d 1304, 1314-16 (D. Utah 2008) (in a third-party liability-insurance-coverage action, concluding that the law of the state where the injury and underlying litigation occurred--rather than the law of the state where the insured was a resident and negotiated the insurance contract--applied to an insurance dispute arising out of that litigation).

C.   Breach of Contract

Pride's amended complaint alleges that the insurers breached the insurance contracts by: (1) hiring the same counsel to defend both Pride and Harbin; (2) discontinuing their defense of Pride after settling the Hatleys' claims against Harbin alone; (3) failing to allow Pride's self-retained defense counsel to hire and pay experts; (4) failing to provide Harbin a defense in the indemnity action Pride filed against her after the settlement with the Hatleys; and (5) using the policies' limits to settle the Hatleys' claims against Harbin without obtaining a settlement of the claims against Pride when no

valid *Stowers* demand had been made.  The insurers seek summary judgment as to all of these claims.

Most of Pride's contractual claims are resolved by determining whether Pride has demonstrated a factual dispute regarding the lawfulness of the insurers' withdrawal of their defense of Pride after settling the Hatleys' claims against Harbin.  Both insurance policies specifically permitted the insurers to withdraw their defense once the policy limits had been paid in settlement.  Thus, rather than challenging the insurers' actions under the specific terms of the parties' insurance contracts, Pride contends that the insurers' settlement on Harbin's behalf was unreasonable because it was not required under *Stowers*.  Specifically, Pride contends that the Hatleys' demand was insufficient to trigger the insurers' *Stowers* duty to settle because it did not propose to completely release all claims against Harbin.

In support, Pride points to its later-filed cross-claim against Harbin for indemnity.  Pride urges that the settlement release regarding the Hatleys' claims against Harbin did not constitute a full release for Harbin because it specifically "acknowledges the existence of and failure to release [potential contribution and indemnity] claims against Harbin."[5]  (Pride's Resp. 14.)  Because

_____

[5]The actual language of the Harbin settlement agreement provides as follows:

> [T]he parties agree and understand that Wayne and Linda Hatley intend to pursue claims for damages and other relief against other parties, including Pride Transport, and that some of those parties may assert claims against [Harbin] for contribution and indemnity to the extent that those claims can be asserted under the law. Notwithstanding any other provision of this agreement, the parties agree and understand that Wayne and Linda Hatley are NOT agreeing to

the release was not a full release, Pride contends, the insurers had no *Stowers* duty to accept the Hatleys' demand and leave Pride exposed.

The settlement undisputedly released, however, **all** of the Hatleys' claims against Harbin arising from the accident in question in exchange for payment of both policies' limits. Pride fails to cite any Texas authority suggesting that an insurer subjects itself to liability when it fails to settle every potential claim against an insured. Indeed, such a position is contrary to the courts' holdings in *Soriano* and *Travelers* dictating that the reasonableness of a settlement be judged by looking solely at the claims proposed to be released by the settlement.[6]

Pride also contends that neither insured agreed to the Hatleys' settlement offer and thus posits that, as a result, the insurers' *Stowers* duties were never triggered. *See Charles v. Tamez*, 878 S.W.2d 201, 208 (Tex. App.--Corpus Christi 1994, writ denied) (concluding that "causes of action for legal malpractice for failure to settle under the *Stowers* doctrine are not assets subject to turnover" where

----

> indemnify, defend, and/or hold harmless [Harbin] as to such claims that may be asserted by others, including Pride Transport. Nothing in this agreement shall be construed as requiring Wayne and Linda Hatley to indemnify, defend or hold harmless [Harbin] from such claims for contribution, indemnity or that otherwise may be asserted under Chapter 33 of the Texas Civil Practices and Remedies Code.

(Continental's App. 289, ¶17.)

[6]In support of its argument, Pride points to *Trinity Universal Insurance Company v. Bleeker*, 966 S.W.2d 489 (Tex. 1998). In that case, the Texas Supreme Court held that the *Stowers* duty was not triggered by a demand to settle a claim where the demand did not propose to release a hospital lien that attached to the claim. That case is distinguishable, however, because of the statutory protection afforded to hospital liens under Texas law. *See* Tex. Prop. Code Ann. § 55.007(a) (West 2007). And the Hatleys agreed in the release to satisfy, indemnify, and hold Harbin harmless from any medical liens. (Pride's App. 314, ¶ 16.) In fact, the settlement demand specifically refers to the opinion in *Bleeker* and indicates the Hatleys' intent to satisfy any such liens. (Pride's App. 281.)

the client was satisfied with the representation).  Twice in its brief, Pride suggests that Harbin requested that the insurers **not** accept the Hatleys' settlement demand unless it extricated her completely from the suit. (Pl.'s Resp. 4, 18.)  In fact, at one point in its brief, Pride posits that the insurers were "told by Harbin not to accept the settlement demand." (Pl.'s Resp. 24.) Unfortunately for it, Pride fails to cite any evidence in support of these contentions.[7]  And the evidence instead reveals that several times during the course of discussions about the Hatleys' settlement demand, Harbin's counsel specifically demanded that the Hatleys' offer be accepted.[8]  (Pride's App. 321, 322-23; Continental's App. 364.)

Pride also contends that the Hatleys' demand was not a valid *Stowers* demand because neither insurer would have been liable for a judgment in excess of policy limits.  Thus, Pride urges, the only reason the insurers chose to accept the Hatleys' settlement demand as soon as they did was to reduce their defense costs and expenses.[9] Pride cites no authority, however, suggesting that this alleged motivation was unlawful or a breach of the insurance policies, at

---

[7]"Judges are not like pigs, hunting for truffles buried in briefs." *U.S. v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). Or, as may be the case here if Pride's contention is correct, in several volumes of evidentiary appendices.

[8]Elsewhere in its response, Pride cites a letter from Harbin's counsel issued **after** the settlement demand had been accepted and the release executed complaining that the terms of the release ultimately negotiated on behalf of Harbin left her exposed to Pride's later-filed contribution and indemnity claims. (Pride's Resp. 16.)  There is no evidence, however, tending to support Pride's contention that Harbin's counsel objected to the settlement prior to its consummation.

[9]On the one hand, Pride suggests that the insurers prematurely accepted the Hatleys' settlement demand in order to extricate themselves from incurring additional defense costs.  On the other hand, Pride suggests that Continental unreasonably delayed in tendering its policy's limits to Lexington.  It seems to the Court that Pride is attempting to have it both ways.

least where, as here, all parties agreed that the Hatleys' claims were "policy-limits" claims.

Finally, Pride complains that the demand was not a valid *Stowers* demand because it exceeded each individual policy's limits. In support of this contention, Pride cites *AFTCO Enterprises, Inc. v. Acceptance Indemnity Insurance Company*, 321 S.W.3d 65 (Tex. App.-- Houston [1st Dist.] 2010, pet. denied). That case involved a settlement demand purporting to settle four personal-injury lawsuits against multiple parties for "the policy limits available under [four] insurance policies." *Id.* at 71. The court held that the insurance companies' *Stowers* duties were not triggered by the plaintiffs' global demand because the "plaintiffs did not offer to release their claims against those insured under a particular policy in exchange for the limits available under that policy. The settlement demand . . . referred to a $2.6 million sum certain, which was an aggregate of multiple policies and an amount that exceeded the [insurer at issue's] policy's limits." *Id.* at 71.

If Continental had not tendered its $1,000,000 policy limits to Lexington before the Hatleys' $5,000,000 settlement demand expired, the Court would agree with Pride. But, as noted above, Continental tendered its policy limits to Lexington just prior to the expiration of the Hatleys' demand.[10] At that point, with combined policy proceeds equaling the amount of the Hatleys' demand, Lexington's *Stowers* duties came into play. *See AFTCO Enters.*, 321 S.W.3d at 70

---

[10]Pride's expert's report indicates that the Hatleys' demand originally expired on July 6, but apparently was later extended to July 20. (Pride's App. 795.)

(citing *Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.,* 20 S.W.3d 692 (Tex. 2000), for the proposition that "the *Stowers* duty does not arise for an excess insurer until the primary carrier has tendered its limits").

Furthermore, by focusing on whether the insurers had a *Stowers* duty to settle, the Court believes Pride misses the mark. Whether or not they were duty bound by *Stowers* to accept the Hatleys' demand, the overarching issue under Texas law in evaluating the insurers' actions is determining whether an ordinary and prudent person would have accepted the Hatleys' demand.[11]  *See Stowers*, 15 S.W.2d at 547 ("where an insurance company . . . assumed the responsibility to act as the exclusive and absolute agent of the assured in all matters pertaining to the questions in litigation . . . it ought to be held to that degree of care and diligence which an ordinarily prudent person would exercise in the management of his own business"); *see also Travelers*, 166 F.3d at 765 (noting that "in *Soriano*, evidence that the larger claimant was willing to settle within policy limits (but had not then made an offer) was deemed irrelevant in the absence of evidence that the settlement reached with the other claimant, considered alone, was unreasonable"). There is no dispute but that the Hatleys' claim was covered by the policies, and their demand for settlement of their claims against Harbin was within the limits of both policies. Furthermore, the uncontroverted evidence reflects

---

[11]The insurance policy issued by Lexington gave it the right to settle cases within its discretion: "we have the right to make such investigation and negotiation and settlement of any claims or suits as may be deemed expedient by us." (Lexington App. 59, ¶ II(A)(1).)

that the demand was reasonable in light of the potential liability Harbin faced as a result of the Hatleys' claims. The evidence reflects that the injuries suffered by the Hatleys and the likely jury verdict to be reached in their Wise-County lawsuit would far exceed the limits of both policies.[12] Consequently, *Stowers*-duty bound or not, the insurers' acted reasonably in accepting the Hatleys' demand despite the fact that Pride remained exposed.

No evidence has been presented by Pride demonstrating that the insurers discontinued their defense of Pride until after their policy limits were paid to the Hatleys in settlement of Harbin's claims. Any refusal by the insurers to hire experts on behalf of Pride after that point was permitted under the insurance policies, which provided that the insurers would have no further duties to defend once the policy limits were paid out in settlement. Furthermore, although Pride complains that Continental initially retained the same defense counsel to represent both it and Harbin, the evidence reflects that separate counsel was retained for Pride after the conflict of interest between the two became apparent. Pride suggests that the conflict should have been apparent at the outset, but offers no proof in support of that suggestion. Thus, Pride has failed to demonstrate a material issue of fact on its breach-of-contract claims, and summary judgment is granted in the insurers' favor on those claims.

D.    Breach of the Covenant of Good Faith and Fair Dealing/Texas
       Insurance Code § 541.060

---

[12]The evidence reflects that the parties believed, based upon prior jury verdicts in other cases, that Wise County was a pro-plaintiff and anti-trucking company venue.

Pride asserts claims against both insurers for breach of the covenant of good faith and fair dealing. As pointed out by the insurers, Texas common law generally does not recognize such a claim in the context of third-party insurance claims. *Maryland Ins. Co. v. Head Indus. Coatings,* 938 S.W.2d 27, 28 (Tex. 1996) ("we now hold that Texas law recognizes only one tort duty in this context, that being the duty stated in *Stowers*"). Subsequent to the filing of suit in the *Maryland Insurance* case, however, the Texas legislature enacted a statute permitting an insured to file suit against an insurer for unfair claims-settlement practices. *See Methodist Hosp. v. Zurich Am. Ins. Co.,* 329 S.W.3d 510, 517 (Tex. App.--Houston [14th Dist.] 2009, pet. denied). That statute makes it

> an unfair or deceptive act or practice in the business of insurance to engage in the following unfair settlement practices with respect to a claim by an insured or beneficiary:
>
>> (2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of:
>>
>>> (A) a claim with respect to which the insurer's liability has become reasonably clear.

Tex. Ins. Code Ann. § 541.060(a)(2) (West 2009). Pride now admits its claim is brought under this statutory provision. (Pride's Resp. at 29-30.)

Pride initially posits that the insurers violated this provision by settling the Hatleys' claims against Harbin alone, thus leaving Pride exposed. For the reasons previously stated, the Court concludes that this conduct on the part of the insurers was not an unfair settlement practice.

Pride also contends that Continental unreasonably delayed attempting to settle the Hatleys' lawsuit. According to Pride, Continental was told by defense counsel in January 2007 that "[b]ased on the facts of the accident, and the dangerous venue, it may be worthwhile to attempt to settle the case at an early stage." (Pride's App. 812.) Pride complains that Continental then waited several months to tender its policy limits to Lexington. In the interim, Harbin's deposition was taken, where she admitted to having falsified her driving records and having been on her cell phone at the time of the accident.

As pointed out by Continental, however, the duty imposed by this statute is not triggered until there has been a settlement demand within policy limits: "an insurer's statutory duty to reasonably attempt settlement of a third-party claim against its insured is not triggered until the claimant has presented the insurer with a proper settlement demand within policy limits that an ordinarily prudent insurer would have accepted." *Rocor Int'l, Inc. v. Nat'l Union Fire Ins. Co.*, 77 S.W.3d 253, 262 (Tex. 2002) (interpreting previous version of statute). Pride has pointed to no evidence tending to suggest that there was a settlement demand within Continental's $1,000,000 policy limits during the period about which Pride complains.

Furthermore, Pride omits the sentence following the one it quotes from counsel's January 2007 letter suggesting an early settlement: "However, we will first need to further pin down the liability facts through the use of experts, and will likely need to conduct

depositions of the drivers of the vehicles . . . involved in the accident." (Pride's App. 812.) Thus, although Pride's defense counsel recommended an early settlement, even he recognized that attempts at an agreement would be premature pending additional discovery.

Pride also complains that the insurers violated this statute by failing to allow defense counsel to pursue the manufacturer and component-part manufacturers of the seat Mr. Hatley occupied during the accident. As noted by Continental, however, Pride was represented by defense counsel who was perfectly capable of pursuing the products defendants. *See State Farm Mut. Auto. Ins. Co. v. Traver*, 980 S.W.2d 625, 627-28 (Tex. 1998) (noting that "[a] defense attorney, as an independent contractor, has discretion regarding the day-to-day details of conducting the defense, and is not subject to the client's [or insurer's] control regarding those details). In any event, the only evidence Pride cites in support of this claim is "Ex. JJ, App. 1,240." (Pride's Resp. 32.) That exhibit wholly fails to suggest that the insurers were preventing counsel from pursuing the products defendants. Instead, it reflects that the Cain law firm **was** "arranging an inspection of the [Hatley] truck to evaluate this contingency." (Pride's App. 1240.)

E.  Breach of Fiduciary Duty/Texas Insurance Code 542

Pride has apparently abandoned its claim for breach of fiduciary duty. It makes no mention of such a duty, except cursorily in its brief under a section about Utah law. (Pride's Resp. at 12-13.) The Court has determined that Texas law applies to the insurers'

actions regarding the Hatleys' lawsuit, however, and Texas law imposes no fiduciary duties. *See In re Segerstrom,* 247 F.3d 218, 227 n.7 (5th Cir. 2001) (concluding that "Texas does not recognize a fiduciary duty between insurers and their insureds, only a duty of reasonable care"); *McKay v. State Farm Mut. Auto. Ins. Co.*, 933 F. Supp. 635, 638 (S.D. Tex. 1995) ("No Texas court has recognized Plaintiff's claim that there is a fiduciary duty owed by an insurer to an insured as a matter of law."), *aff'd*, 91 F.3d 137 (5th Cir. 1996); *Caserotti v. State Farm Ins. Co.*, 791 S.W.2d 561, 565 (Tex. App.--Dallas 1990, writ denied) ("we have not found any Texas authority recognizing the existence of a fiduciary relationship between an insured and his or her insurer"). Similarly, Pride has failed to address the claim asserted in its amended complaint under section 542 of the Texas Insurance Code.

## III. Conclusion

As a result, the Court concludes that the insurers' summary-judgment motions should be and hereby are GRANTED, in that Pride should take nothing by way of its claims against them. A final judgment consistent with this opinion will issue this same day.

SIGNED March 31, 2011.

_Terry R. Means_
TERRY R. MEANS
UNITED STATES DISTRICT JUDGE